Case number four for argument this morning is United States v. Andrews. Ms. Sostok. Good morning, your honors. May it please the court, counsel. Omari Andrews did not live at the Palm Drive apartment where the contraband, including the firearms, were found. The firearms that were found in this apartment were not linked. There was no substantial connection to Mr. Andrews himself. Mr. Andrews' family connection to the apartment alone is not enough to find him guilty beyond a reasonable doubt of possession of these recovered firearms. Importantly, this court has held that a substantial connection to the property is not enough to establish constructive possession. Instead, the government must sufficiently connect the defendant to the contraband, separating true possessors from mere bystanders. Here, Omari was a mere bystander with respect to the firearms. No one ever saw a firearm in his possession, despite the fact that law enforcement surveilled him approximately five times. He was arrested outside that apartment building and had no firearm on him. How do you get around the jail call with his dad? His dad has experience with firearms charges. And I think in the context of that call, knowing that that call happened after Mr. Andrews' arraignment, I think it's a bit more than a reasonable assumption what defense counsel argued at trial and what I argued. But the jury rejected that, and we have to view the evidence in the light most favorable to the government. And he's essentially asking his dad what he's going to be charged with regarding the firearms, and his dad is telling him. Yeah, I think that's a correct assessment of what happened there. He was asking his dad, you know, there were firearms found in this apartment, and now I'm obviously being charged with something. He's asking his dad, in your experience, what are these charges going to look like, and what do you think this is going to mean for me? It's not quite that hypothetical. Yeah, I agree with it. There's a part of that conversation. I'm trying to find it here, but I remember it. There's a part of that conversation where his dad says, well, how many guns did they find? Or how many, they use a jargon term or something, and he says four. Yeah, and that's how many they found. He had just been at his arraignment where the government had presented the evidence that they had against him. But it was more than, it was how many you had in the house, the dad asked him. There was four. Not how many did they pick up. It was how many you had in the house. And again, given the standard of review here, I think you have an uphill battle here on sufficiency. I would just want to make one point as to what your question earlier where you said that the firearms, sorry, I lost my train of thought there. So basically the firearms being in the apartment, I don't think him saying that you had is ultimately taking possession of them. And also, I don't think, back to what you had said earlier. Well, what you think is not the question. The question is whether reasonable jurors could think that answer was substantive evidence. Why is that off limits to reasonable jurors? I don't believe it's off limits. But I would just point out that we do not know if the jury rejected or what their thought about this jail call was. Because there was some other evidence that was introduced at trial. And in fact, about 50% of this trial. But the Rule 29 motion can succeed only if there is no evidence in the record from which a reasonable juror could find guilt. And the point being made by the district judge and my colleagues and me is that your client's own admissions provide that sort of evidence. I would not agree that that phone call is an admission. I do think it can be read more than one ways, more than one way. I agree with that. But like, but I do not think that my client is admitting that those are his firearms. He is discussing in the context of what he was just presented in court. He's talking to his parents and trying to get advice from someone who, unfortunately, also had experience with possession of contraband in the criminal justice system. And I don't think there's any way for us to know how much weight the jury gave this particular factor. So when you look at, I found, I mean, these telephone calls rarely end up being good things for defendants. He says to his father, do you think they're going to hit me with a 922C? How many you had in the house? That's his dad's question. There was four, his dad. I don't think they was together, though. No, they wasn't together. They were in different rooms. Well, that's actually factually correct. I agree. And that's because the government had just arranged Mr. Andrews and presented that evidence during the arraignment. That arraignment happened— I mean, it's one way to look at it. But the question is the jury, I mean, can you say conclusively the jury is compelled to see it that way? No reasonable juror could possibly view that phone call in a different light? I think, no, I would not say that. I agree that the phone call can be viewed in different lights, but I do not think it is a flat-out admission. I think that it is an acknowledgment of his knowledge of what was found. There's an argument going back and forth between the parties about fingerprint evidence, and this fellow named Thomas Kern, who did fingerprint work. I don't understand you to be challenging—correct me if I'm wrong, okay, so I'm trying to get this clarified— that there was a fingerprint match with Mr. Andrews on the fingerprint that is labeled 4A. Correct. Okay, 4A, and that's on the AR-styled pistol that was found. There was actually—so the defense fingerprint expert disputed that testimony. So that testimony— Hold on, there's more than one fingerprint, and there's—isn't one of them called 3A and this one's 4A? Yes, correct. There's a fight about 3A, right? Correct. So the defense fingerprint expert testified that they could not include or exclude Mr. Andrews' fingerprint from being 3A or 4A. But you did not challenge the admissibility of the evidence. No, I did not. Let me finish my question, please. You did not challenge the admissibility of the expert testimony as to fingerprint 4A. You did challenge the admissibility as to 3A, but not 4A, so that's a weight issue for the jury. Correct, yes. And I think you would agree that in order to be convicted under the statute, the jury only needed to find that he possessed one of the four firearms, not all four. Correct? Correct, yes. That's why that—that's the question—that 4A fingerprint is a—he's dealt you a tough hand on that one. Well, I would also say, though, that there was—there were two experts. This was a situation of competing expert testimony, and I don't think that we can necessarily say the government's expert is more credible than the defense expert. But you're ignoring the standard that we have here, viewing the evidence in the light most favorable to the government. You may have had a great argument for the jury, but we're not here to weigh the two experts. We have to accept and view in the light most favorable to the government the evidence. Which means accepting their fingerprint evidence expert. I don't— It's very clear in saying print 4A matched the print found on the AR-style pistol from the home. That's correct, but I believe that the defense expert said the opposite, that they could not—they could not— That's fine. That just tells us there's a jury question. I agree that there was a jury question, but— Sorry, about the government's expert. Where can we find the district court's ruling under Rule 702 that the testimony of the government's expert about fingerprint 3A was admissible? Your Honor, basically what the court— I'm not asking what the court said. I'm asking where can we find it. The reason I'm asking that question is because Circuit Rule 30 requires the district court's oral rulings to be included in the appendix, and they are omitted from your appendix. You've certified compliance with Circuit Rule 30, but as far as I can see, you did not, in fact, comply with Circuit Rule 30. I apologize, Your Honor. I did not realize that that oral ruling— I don't understand how you can say you did not realize it. Circuit Rule 30A and Circuit Rule 30B1 both require the inclusion in the appendix of all oral rulings by the district court. It's your obligation to read these things before certifying that you've complied with them. That was completely my mistake, and I sincerely apologize to the court for that error. I did quote in full what the court said— No, you didn't. You quoted a snippet at page 3 of your brief. You did not quote them in full. We went out of our way to find them. I thought that was in full, Your Honor. Look, trying to talk over the court won't help you. The snippet at page 3 is not remotely all the district judge had to say. Not remotely. My understanding was the rest of the district's court decision was whether or not the defense was allowed to introduce expert testimony because there was an issue about whether the defense's expert had been provided in a timely manner because of the lateness of counsel's appointment to the case. So my understanding was the rest of the trial court's ruling discussing the experts was actually about the defense expert and was not about the admissibility of Fingerprint 3A. So that was my interpretation, and if the court disagrees, that's my mistake then. But my interpretation was the court did discuss for a very long time the defense expert's ability to testify, and that was about 50 percent or more of the hearing. Thank you, Ms. Shostak. And then— Thank you, Ms. Shostak. You're welcome, Your Honor. Ms. Sullivan. May it please the court, Irene Sullivan on behalf of the United States. The evidence here overwhelmingly established defendant's possession of the firearms recovered from the Palm Drive apartment. There was ample evidence of his connection to the firearms as well as to the apartment. To begin, the jury heard the jail call. When defendant's father asked him, after a question about a potential charge under 924C, how many you had in the house, defendant answered, there was four, referring to the number of firearms. The jury was certainly entitled to conclude the defendant was admitting that the four guns found in the house were his. The jury also heard about defendant's extensive use of the apartment where the firearms were found. And lastly, the jury heard evidence about defendant's two prints on the firearms. As to one of these prints, he did not move to exclude testimony regarding it at trial, and he is not challenging its admission on appeal. Ms. Sullivan, one of the bases that the district court denied the motion to exclude print 3A was on the grounds of timeliness. Given the change in lawyers here and the attempt to keep the trial date, is that something we should be more flexible with? I know the court went on to address the merits as well. Your Honor, it was clear from the beginning of this case that fingerprint testimony was going to be at issue in this trial. The trial was even moved once under prior counsel, in part to allow for the retention of a fingerprint expert. And a new counsel came on board. June 5th, they filed their appearance two months ahead of trial. Even at the final pretrial conference on July 30th, there was no motion to exclude this testimony about this fingerprint. Three days before, three days, two business days on the eve of trial, the district court was certainly well within its discretion to deny it on. So counsel came on board two months in advance of the trial? The appearance was entered June 5th. The official appointment was June 27th. Trial began August 12th. And if there are no further questions, the government asks this court to affirm the judgment of the district court. Thank you very much. The case is taken under advisement.